(No. 53424.—

*In re* CUSTODY OF CHARLES SEXTON (Donnie E. Sexton, Appellant, v. Janice S. Sexton, Appellee).

*Opinion filed March 18, 1981.*

Kritzer, Stansell, Critser & Whitman, of Monmouth (Greg McClintock, of counsel), for appellant.

Michael J. Mannino, of the West Central Illinois Legal Assistance, of Galesburg, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

This case involves the validity of a child-custody modification under section 610 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 610). At the time of plaintiff's and defendant's divorce,

custody of their son was awarded to defendant, Janice S. Sexton. After a hearing on plaintiff Donnie E. Sexton's subsequent petition for modification of the custody decree, the circuit court of Warren County found in part that "[t]he minor child's present environment endangers seriously his mental, moral and emotional health and the harm likely to be caused by a change in environment is outweighed by its advantages to the minor child." Accordingly, the divorce decree was modified and custody of the child was awarded to the plaintiff.

Defendant appealed the decision of the trial court, contending that the decision was against the manifest weight of the evidence, but a divided appellate court found (82 Ill. App. 3d 482), *sua sponte,* that the trial court's decision was void because plaintiff had failed to file affidavits as required by section 610(a) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 610(a)). We granted leave to appeal. We reverse.

The parties were divorced on August 10, 1976. Custody of their minor son was awarded to the defendant, Janice S. Sexton. On December 16, 1976, defendant's motion (agreed upon by both parties) to modify the visitation requirements was granted. (The motion's catalyst was a dispute, resulting in the filing of disorderly conduct charges against both parties, which arose on one occasion when plaintiff exercised his visitation privileges.)

On April 25, 1977, plaintiff petitioned to modify the decree. Alleging in a verified complaint that defendant was not a fit and proper person to care for the child, plaintiff prayed that the care, custody, and control of the child be awarded to him, with visitation rights granted to defendant. On that same day, a guardian *ad litem* was appointed for the child by the court. Defendant's motion for a continuance was granted over plaintiff's objection. Defendant petitioned for a rule to show cause on December 19, 1977. The court found, after a hearing on December 28,

1977, that plaintiff had not complied with the divorce decree, in that he had temporarily retained custody of the child against defendant's wishes, but it did not find plaintiff in contempt of court. At the same time, the guardian *ad litem's* motion to appoint the Warren County juvenile probation office to make an investigation of the parties was granted.

Defendant's answer and affirmative response to the petition to modify the decree was filed on March 27, 1978. On April 25, 1978, a hearing was held. After an objection was sustained as to evidence regarding occurrences happening after the date of plaintiff's petition, plaintiff moved for a continuance, and leave was granted for him to file an amended petition. The amended petition, filed on May 9, 1978, and verified by the plaintiff, stated in pertinent part:

"3. The present environment for Charles [the minor child] endangers seriously his physical, mental, moral and emotional health such that it is in his best interests that a change of custody to Donnie be made based on the following:

a. On October 22, 1976, Janice took Charles with her to the First Street Tap, a tavern, where they stayed for several hours while she consumed alcoholic beverages.

b. On October 22, 1976, Charles had fallen and received several stitches and despite his injury and contrary to his well-being Janice took Charles to the First Street Tap as alleged in Paragraph 3(a).

c. That on several occasions Janice has been late in dropping Charles off for visitation or picking him up for visitation, as much as one day late.

d. In the summer of 1977, Janice Sexton took Charles to C.J.'s Pub, a tavern, in Monmouth, Illinois, where she stayed for over an hour and consumed alcoholic beverages.

e. On October 27, 1977, Janice brought Charles to Donnie in a state of health which necessitated that Donnie take Charles to Community Memorial Hospital in the early morning hours of October 28, 1977,

where Charles was hospitalized with pneumonia for six days.

f. While Charles was in the hospital as set out in Paragraph 3(e) Janice came to visit Charles for no more than 5 minutes per day with the exception of Sunday when she stayed with Charles for approximately 15 minutes.

g. During the winter of 1977-1978, Charles has consistently had colds while in Janice's custody and would be delivered to Donnie for visitation without medication.

h. In March of 1978, Janice was hospitalized at Community Memorial Hospital for a period of approximately one week during which time she refused to disclose to Donnie the whereabouts of his son, Charles, and told him that Chuck's well-being was none of Donnie's business.

i. While in the custody of Janice, Charles has been neglected, in that he is not properly washed, does not have clean clothes and is not properly fed.

j. While in the custody of Janice, Charles has received scratches and bites about the face, head, ears, and hands apparently from a dog.

k. Since at least October of 1977, to the present Janice has lived in an open and notorious relationship with another man not her husband, to-wit: Gary Peterson.

l. In open court, while under oath, Janice committed the criminal offense of perjury on December 22, 1977, in that she lied when she said that she did not at that time live with Gary Peterson.

m. Gary Peterson, with whom Janice lives, has a serious criminal record as shown by the records of the Warren County Circuit Clerk, and has, in fact served time in prison for the offense of forgery and is currently on parole.

4. The petitioner, Donnie, has remarried and can provide a suitable home for Charles.

5. Courtney Cox, an officer of the Court, has conducted an investigation of the homes and persons of Donnie E. Sexton and Janice S. Sexton and found that it is in the best interests of Charles that custody of Charles be changed to Donnie.

WHEREFORE, Donnie E. Sexton, asks that the Court enter an Order modifying the Decree to provide that the custody, care and control of Charles be placed with Petitioner."

A response to this amended petition was filed on May 19, 1978, and hearings were held on June 15 and 19 of that year. No objections to this petition grounded on the affidavit requirement of section 610(a) were ever filed in this case by the defendant or the guardian *ad litem.* The order changing custody was signed on June 20, 1978, after which the instant appeals were taken.

Section 801(b) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 801(b)) provides for the Act's application "to all pending actions and proceedings commenced prior to its effective date with respect to issues on which a judgment has not been entered." Subsection (c) of this same section (Ill. Rev. Stat. 1977, ch. 40, par. 801(c)) specifically indicates that the new act is applicable "to all proceedings commenced after its effective date for the modification of a judgment or order entered prior to the effective date of this Act." The effective date of the Act, October 1, 1977, fell between the filing of the original and the amended petition in this case. Here, no judgment was rendered on the plaintiff's original motion for custody modification before October 1, 1977. Therefore, we must apply the new act.

The provision of the new act primarily at issue is section 610(a) (Ill. Rev. Stat. 1977, ch. 40, par. 610(a)), which states: "No motion to modify a custody decree may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health." Section 610(a) parallels section 409(a) of the Uniform Marriage and Divorce Act (9A Unif. Laws Ann. sec. 409(a) (1973).) It represents a legislative policy

strongly favoring the finality of child-custody judgments. See *In re Custody of Harne* (1979), 77 Ill. 2d 414, 420-21.

Defendant contends, and the appellate court held, that the affidavit requirement of section 610(a) was jurisdictional and, therefore, that the trial court's modification order was void. This section is a mandatory, rather than a directory, provision, because the consequence of noncompliance, that the child-custody modification motion be disallowed, is clearly provided in the Act. (See *Hernandez v. Department of Labor* (1981), 83 Ill. 2d 512; *Zimmerman Brush Co. v. Fair Employment Practices Com.* (1980), 82 Ill. 2d 99, 106, and authorities therein cited.) Holding the provision mandatory, however, does not establish that section as a jurisdictional requirement in the sense that it cannot be waived. See, *e.g., Springfield-Sangamon County Regional Plan Com. v. Fair Employment Practices Com.* (1978), 71 Ill. 2d 61, 68-69 (mandatory statutory provision subject to waiver).

"Jurisdiction is of two kinds,—jurisdiction of the subject matter and of the person,—and both must concur or the judgment will be void in any case in which a court has assumed to act. The difference is that jurisdiction of the subject matter is given by law and cannot be conferred by consent, but jurisdiction of the person may be obtained by consent." (*Rabbitt v. Frank C. Weber & Co.* (1921), 297 Ill. 491, 497.)

(Here, there is no question of jurisdiction over the parties.) To the same effect is *People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, 105, in which it was stated that lack of subject-matter jurisdiction could not be waived by a defendant's appearance and participation in a trial.

Article VI, section 9, of the Illinois Constitution (Ill. Const. 1970, art. VI, sec. 9) states in relevant part: "Circuit Courts shall have original jurisdiction of all justiciable

matters ***." Under section 601 of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 601; now see Ill. Rev. Stat. 1979, ch. 40, par. 2104), as even a cursory examination of that section reveals, the circuit court of Warren County had jurisdiction of the subject matter of this case. There is nothing unusual about this. Children of divorced parents traditionally have been considered wards of the divorce-granting court, which has continuing jurisdiction over matters affecting them. See *Kelley v. Kelley* (1925), 317 Ill. 104.

Reference to the Uniform Marriage and Divorce Act (Uniform Act) leads to the same result. In the Uniform Act, section 401 (9A Unif. Laws Ann. sec. 401 (1973)) is the jurisdiction provision. The affidavit requirement of section 409 of the Uniform Act (9A Unif. Laws Ann. sec. 409 (1973)), the counterpart to Illinois' section 610, was not mentioned as a jurisdictional requisite in section 401 of the Uniform Act, and it is clear that this requirement was not intended as a limitation of the subject-matter jurisdiction of a court otherwise competent to hear and decide the case.

Defendant has cited cases from other jurisdictions which, considering statutes similar to our own, have labeled the affidavit requirement jurisdictional. Merely labeling the requirement as such, however, does not answer the question posed by this case. None of the cited cases involved the failure of a party to object to the filing of an affidavit. Many did not even involve the failure to file one, and it is far from clear that these courts used the term "jurisdictional" in the subject-matter sense or that the requirement was considered nonwaivable. Accordingly, they cannot be considered authority for the proposition that the failure to file affidavits as section 610(a) requires renders a subsequent judgment void in every circumstance.

We conclude, in view of the foregoing, that failure to file affidavits in accordance with section 610(a) does not render a judgment subsequently entered in the same pro-

ceeding void for lack of jurisdiction. This conclusion, however, merely sows the seeds for the further analysis necessary to determine whether this requirement should be considered waived under the facts of this case. See 73 Ill. 2d R. 366(a)(5); *cf. Hux v. Raben* (1967), 38 Ill. 2d 223, 224-25.

In *People v. Bradford* (1975), 62 Ill. 2d 21, a complaint had not been verified in accordance with the statutory requirements (Ill. Rev. Stat. 1971, ch. 38, par. 111—3(b)). The court noted that a verified complaint was not a jurisdictional prerequisite to the prosecution of a criminal offense and was waived by the failure of the defense to object to the complaint until its cross-examination of the complaining witness, "after the complainant-police officer had in open court testified to all of the facts alleged in the complaint." (62 Ill. 2d 21, 22.) In *In re Greene* (1979), 76 Ill. 2d 204, the State filed petitions for adjudications of wardship alleging that specific criminal offenses had been committed prior to respondents' 17th birthdays. The court stated that general denials to the petitions "did not place in issue respondents' ages and the court's authority to proceed" (76 Ill. 2d 204, 215), despite the age requirement specified in the delinquency provision of the Juvenile Court Act (see Ill. Rev. Stat. 1977, ch. 37, par. 701—1 *et seq.*). The court held that "[i] f the respondent does not challenge the authority of the court to proceed under the provisions of the Act, the respondent has consented to the court's authority and has waived any objection to his treatment as a juvenile." 76 Ill. 2d 204, 218.

The instant case, in which neither the guardian *ad litem* nor the defendant objected to holding the hearing, is as strong as *Bradford* and far stronger than *Greene.* Here, as in *Bradford,* facts not sworn to in the manner required by statute were testified to in open court. As in *Bradford,* the proceedings here resulted in an adjudication

on the merits. In *Greene,* as here, parties sought to gain advantage on appeal from their silence in the trial court. Nor can it be said that the reasons for the verification requirement at issue in *Bradford* and for the age requirement at issue in *Greene* are less compelling than the affidavit requirement at issue here.

In addition to the *Bradford* and *Greene* analogies, considerations of judicial economy and simple justice support holding that the affidavit requirement was waived here. It is difficult to discern what useful purpose would be served by relitigating this case, in which the standard for changing custody is identical to the standard by which the required affidavits were to be judged. The verified complaint, moreover, was specific and informed the court, the defendant, and the guardian *ad litem* of the facts relied upon for a custody change. The uselessness of an objection grounded upon section 610(b) must have been apparent to the defendant and the guardian *ad litem,* where plaintiff was certainly capable of obtaining the affidavits setting forth the allegations contained in the complaint and where those sworn allegations would have been sufficient to justify a hearing on plaintiff's motion. Obviously, too, neither defendant nor the guardian *ad litem* regarded plaintiff's motion as indicative of bad faith. Nor would it be likely that such a contention could be sustained in a situation where the trial court, applying the rigorous standards of section 610(b), after hearing the evidence, has agreed that a change is warranted. For the same reason, this is not a situation where this court should intervene to enforce this requirement where neither the trial court nor trial counsel have done so.

The affidavit requirement of section 610(a) generally can be enforced adequately by competently represented parties and by trial courts. That the parties elected to forgo its protections and proceed to the merits, under the circumstances here, does not render the decision void. We

therefore reverse the judgment of the appellate court and remand the cause to it for consideration of the merits of defendant's appeal, intimating no view as to what the result should be.

*Appellate court reversed; cause remanded, with directions.*