*In re* MARRIAGE OF DIANA MARIE KADING, Petitioner-Appellant, and DOUGLAS KENT KADING, Respondent-Appellee.

Second District   Nos. 2—85—0989, 2—85—1055 cons.

Opinion filed December 9, 1986.

Harold Richter and H. Joseph Gitlin, both of Woodstock, for appellant.

Mohr, Reilly, Prather, McNerney & Graham, of McHenry, for appellee.

JUSTICE HOPF delivered the opinion of the court:

Petitioner, Diana Marie Kading, and respondent, Douglas Kent Kading, were divorced in September 1983. In June 1984 respondent petitioned the trial court to amend the judgment of dissolution of

marriage by transferring the custody of the minor children of the parties from petitioner to respondent. On September 10, 1984, a hearing was held on respondent's application for change of custody. The trial court ruled in respondent's favor and ordered the transfer of custody. Petitioner moved to vacate the transfer of custody. The court denied this motion and petitioner's subsequent motion for reconsideration. Petitioner filed a notice of appeal regarding the custody issue. Subsequently, another judge ordered petitioner to pay respondent's attorney fees. Petitioner also appealed from this order, and the two actions were consolidated on appeal.

In this court petitioner argues: (1) that the trial court lacked subject matter jurisdiction to order a transfer of custody within less than two years of the prior custody award absent respondent's timely filing of an affidavit showing "endangerment" pursuant to section 610(a) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (Ill. Rev. Stat. 1983, ch. 40, par. 610(a)), and (2) that the trial court erred in requiring petitioner to pay respondent's attorney fees since there was no showing of respondent's inability to pay his fees and petitioner's ability to pay respondent's fees.

Petitioner and respondent were married in September 1978; two children were born of the marriage. At the time the marriage was dissolved in September 1983, petitioner was granted custody of the children. Shortly thereafter, the petitioner remarried, and in March 1984 petitioner, her new husband, and the children moved to Michigan without leave of court.

In April 1984, respondent filed a petition for rule to show cause against petitioner for removal of the minor children from Illinois. On May 17, 1984, the court granted the petitioner's attorneys time to answer or plead to the petition for rule to show cause. On June 5, 1984, the court entered an order allowing respondent to file a petition for change of custody, and on June 29, 1984, respondent filed his petition, seeking to have custody of the children transferred to him.

The petition alleged that petitioner had remarried and that her new husband had a past history of criminal charges relating to child abuse; that petitioner, her husband, and the minor children were living in a trailer which was insufficient to properly house the number of people living therein; that petitioner's frequent moves resulted in a lack of stability for the children; and that petitioner's move from Illinois to Michigan was without court permission. Petitioner was given 14 days to respond to the petition.

On June 6, 1984, on notice to petitioner's attorneys, respondent filed a petition for visitation. On that same date the court entered an

order requiring petitioner to allow visitation by respondent in Illinois. The order further stated that, "Hearing on other motions is set for September 10, 1984 ***." It was necessary for respondent to file an action in Michigan to enforce his visitation rights. On July 24, 1984, on notice to petitioner in Michigan, petitioner's attorney in Michigan, and respondent's attorney, petitioner's attorney in Illinois withdrew his appearance.

On September 10, 1984, a hearing was held on respondent's petition for change of custody. At the beginning of the proceeding, the court noted that on July 6, 1984, the court had been contacted by Theodore Albert, an attorney practicing in Michigan and representing petitioner in Michigan, expressing a desire that the September 10 hearing be continued. The court noted that it informed Albert that the matter had been set for trial for a substantial time and that the proceeding would not be continued but would proceed on September 10 as set. Additionally, the court noted on the record that respondent's attorney had been contacted by Albert a few days prior to the September 10 hearing, again requesting that the matter be continued. Respondent's attorney informed Albert the matter was going to proceed as scheduled. Petitioner was not present at the September 10 hearing nor was she represented by counsel.

At the September 10 hearing, respondent testified how the children were frequently left at night with a 10-year-old baby-sitter; that one of the children had injured the other with a BB gun; that the children now refer to respondent by his first name rather than by "father" and that the children had been threatened with a spanking by petitioner's present husband if they mentioned respondent's name in the house; that petitioner, her husband, and the children were living in a run-down trailer; that petitioner's husband would not allow respondent to speak with his children on the telephone and had threatened respondent with harm; and that respondent had information that petitioner's husband had spent time in jail for molesting his 10-year-old daughter. Following respondent's testimony, respondent's attorney asked him if all the information set forth in respondent's petition to amend the dissolution judgment was true and if respondent would sign an affidavit to that effect. Respondent replied affirmatively.

In its oral findings the trial court noted that "on the basis of the affidavits that have been testified to, and will be filed, the Court will find that there is some basis for the Court to believe that *** the children's present environment may seriously endanger their physical, moral, emotional and mental health." The court also found that clear and convincing evidence established that a change in circumstances

had occurred since the judgment of dissolution. The court then found that a change of custody would be in the best interests of the children and transferred the custody of the minor children to respondent.

On September 14, 1984, respondent filed an affidavit stating "the children have been kept in an environment which is detrimental to their physical, mental and emotional health, in that they have been in an unstable environment geographically moving four (4) times since the entry of the Judgment for Dissolution of Marriage; permanently moving from the State of Illinois without Court permission; being prevented from addressing their natural father as 'Dad', and attempting to have him erased from their minds and memories." Additionally, respondent stated that the physical needs of the children were not properly provided for and that they were being left with an immature baby-sitter who had harmed the children. Finally, respondent set forth that the children were not properly clothed and kept clean and that their environment was detrimental to their emotional health.

Also, on September 14, 1984, the court entered its written order transferring custody of the children from petitioner to respondent.

On February 8, 1985, petitioner, by her new attorney, Sidney Axelrod, filed a petition to vacate certain orders, including the order for change of custody. In her petition petitioner averred that she had not received notice of the September 10, 1984, hearing and, therefore, did not have the opportunities to appear or request a continuance, to respond to any charges, or to present any evidence in her behalf. The court found petitioner had due notice of the hearing and denied petitioner's petition to vacate the orders.

Petitioner filed a motion for reconsideration, which the court denied on May 13, 1985. Subsequently, another new attorney for petitioner filed a motion to vacate the trial court's change of custody. The motion stated that the trial court had lacked subject matter jurisdiction to hear respondent's petition since respondent had failed to file an affidavit showing that the children's present environment might seriously endanger their physical, mental, moral, or emotional health. Petitioner's motion also asserted that no leave was given the respondent to file his petition for modification of custody judgment.

On September 20, 1985, petitioner amended her motion to vacate, stating that respondent did file an affidavit but that the affidavit was filed on September 14, 1984, several days after the September 10, 1984, hearing, and that the affidavit failed to allege endangerment as required by section 610(a) of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 610(a)). On November 12, 1985, the court denied petitioner's motion to vacate the change-of-custody order of September 14, 1984, finding

that the jurisdictional requirements of section 610(a) had been met. Petitioner appealed the custody issue.

Subsequently, on September 10, 1985, another judge entered an order directing petitioner to pay one-third of respondent's attorney fees which he incurred in pursuing his claims and in responding to petitioner's defenses. The court found that petitioner had an interest in property which would allow her to pay the attorney fees. Petitioner also appealed from this order.

█ Petitioner first contends that the trial court lacked subject matter jurisdiction to order a transfer of custody within less than two years of the prior custody award since respondent did not timely file an affidavit showing "endangerment" as required by section 610(a) of the Act (Ill. Rev. Stat. 1983, ch. 40, par. 610(a)). Further, petitioner maintains that she did not waive the affidavit requirements and that respondent's late filing of his affidavit admits that there was no waiver.

Section 610(a), the provision at issue, states: "Unless by stipulation of the parties, no motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health." (Ill. Rev. Stat. 1983, ch. 40, par. 610(a).) The Illinois Supreme Court in *In re Custody of Sexton* (1981), 84 Ill. 2d 312, 418 N.E.2d 729, found that the affidavit requirement of section 610(a) is mandatory in the sense that the consequence of noncompliance is that a motion for modification of child custody may be dismissed. (84 Ill. 2d 312, 319, 418 N.E.2d 729.) However, the court stated that the mandatory nature of a statutory provision does not establish it as a jurisdictional requirement which may not be waived (84 Ill. 2d 312, 319, 418 N.E.2d 729) and that in determining whether the affidavit requirement of section 610(a) should be waived, the facts of the case must be considered (84 Ill. 2d 312, 321, 418 N.E.2d 729). Under the facts of *Sexton*, the supreme court concluded that the requirement had been waived. Thus, in light of the decision in *Sexton*, failure to file an affidavit in the instant case in accordance with section 610(a) does not render the trial court's judgment void for lack of jurisdiction if it can be shown that under the facts of the case, petitioner waived the requirements of section 610(a).

In *Sexton*, both the mother, the parent contesting the change of custody, and the guardian *ad litem* were present at the hearing on the father's petition to modify the child-custody award within two years of the dissolution judgment. However, neither party objected to the

father's failure to file an affidavit as required by section 610(a). In considering the affidavit requirement waived, the *Sexton* court pointed out that the facts not sworn to in an affidavit were testified to in open court and that the standard for changing custody was identical to the standard by which the required affidavits were to be judged. Additionally, the court stated that the verified complaint seeking change of custody was specific and informed the court, the mother, and the guardian *ad litem* of the facts relied upon for a custody change. The court also believed the mother and the guardian *ad litem* sought to gain advantage on appeal from their silence in the trial court and that considerations of judicial economy and simple justice supported a holding that the affidavit requirement was waived.

■ In the instant case, petitioner maintains that the facts favor her position that there was no waiver on her part since she was neither present nor represented by counsel at the September 10, 1984, hearing on respondent's petition for modification of the custody award, since she was not attempting to gain appellate advantage by her silence in the trial court, since no guardian *ad litem* was appointed, and since respondent's petition lacked the specificity of the *Sexton* petition.

Petitioner implies in her brief, and maintained in her testimony at the March 15, 1985, hearing on her motion to vacate the change-of-custody order, that her absence at the September 10 hearing was due to lack of notice. The record, however, belies petitioner's claim that she did not know of respondent's petition to modify the dissolution judgment regarding custody or of the September 10 hearing thereon.

Despite petitioner's contention that attorney Weisz, who represented her during the dissolution proceedings, was not representing her in the matter of respondent's petition, the record shows that he appeared on her behalf at several hearings. The trial court's order of June 29, 1984, shows that Weisz was present at the time respondent presented to the court his motion to amend the judgment of dissolution regarding custody and that at that time petitioner was given 14 days to respond or otherwise plead to respondent's petition. The order of July 6, 1984, shows Weisz was present when the court heard and granted respondent's motion for visitation and when it set earlier filed motions, including the petition to amend the dissolution judgment, for hearing on September 10, 1984. Further evidence of Weisz' representation of petitioner is reflected by his notice of motion to withdraw as petitioner's counsel and his notice of petition for attorney fees, which he sent both to petitioner in Michigan and her attorney in Michigan, Theodore Albert. Moreover, the list of itemized ser-

vices, performed by Weisz as petitioner's attorney, and attached to his August 2, 1984, motion for attorney fees, shows that he was continually in contact with petitioner's Michigan attorney, Albert, regarding the status of the instant case from the time prior to the filing of respondent's petition until Weisz' withdrawal on July 24, 1984.

Additionally, the court noted on the record at the September 10 hearing that it had been contacted per phone by attorney Albert prior to the hearing date, requesting a continuance of the September 10 hearing, and that respondent's attorney had also been contacted by Albert with a similar request prior to the hearing. These acts convince us, as they did the trial court, that petitioner had knowledge of respondent's petition to amend the dissolution judgment and the hearing thereon. Thus, contrary to petitioner's representations here, she did have notice of respondent's petition and she also was represented by counsel who did not respond in her behalf to respondent's failure to file an affidavit. The acts of a party are important in determining if a waiver occurred. (See *In re Custody of Sexton* (1981), 84 Ill. 2d 312, 418 N.E.2d 719.) Here, petitioner's inaction in not objecting to the lack of affidavit appears to constitute a waiver.

Nevertheless, under the *Sexton* decision, the failure to object to the father's lack of affidavit did not alone constitute waiver. In determining the issue of waiver, the court in *Sexton* also considered that the mother attempted to gain appellate advantage by her silence in the trial court. There is no evidence that such is the case here. Also, since a guardian *ad litem* had been appointed to represent the children in *Sexton*, petitioner maintains that the failure to appoint a guardian *ad litem* in the instant case also supports her claim of lack of waiver. However, petitioner cites no authority to support such a contention.

In holding that the affidavit requirement was waived in *Sexton*, the supreme court relied on the fact that the verified complaint seeking change of custody was specific and informed the court and parties of the facts relied upon for a custody change. Additionally, the facts not sworn to in an affidavit were testified to in open court. In *Sexton*, it was the factor of endangerment, as alleged in the petition by means of specific incidents on specific dates, plus the court testimony which helped persuade the court to allow the change of custody within two years of the prior custody adjudication without an affidavit.

In the instant case, respondent's petition lacks the same degree of specificity as the *Sexton* petition and alleges only substantial change in circumstances and not endangerment. In particular, respondent's petition sought a change of custody based on the facts that petitioner

had remarried and that her new husband allegedly had a past history of criminal charges relating to the abuse of minors; that petitioner and her present husband had changed residences three times since the judgment of dissolution thereby creating a lack of stability in the children's environment; that their present residence, allegedly a two-bedroom trailer, was totally insufficient to properly house the number of people living therein; that petitioner's permanent removal of the children from Illinois without court permission prevented visitation of the children with respondent; and that petitioner's conduct as it related to the children was detrimental to their mental, moral, and emotional well-being.

Nevertheless, although respondent's verified petition does not use the term "endangerment" in the allegations, it does represent by its allegations that petitioner's present husband has a past history of criminal charges relating to the abuse of minors and that respondent's children are, in effect, being exposed to danger or harm by residing with petitioner and her husband, Michael Vinnedge. Furthermore, support for this allegation was provided through respondent's testimony at the September 10 hearing on his petition to amend the custody award. At that time, respondent testified that he had information that Vinnedge spent time in jail for molesting his 10-year-old daughter and that his daughter had been taken from him on several occasions by social services in Michigan because of fondling incidents. This testimony and other testimony given by respondent to the effect that petitioner's conduct was detrimental to the physical, mental, moral, and emotional health of the children was not challenged or impeached due to petitioner's failure to appear or be represented by counsel at the hearing.

The trial court is in the best position to review the evidence and to weigh the credibility of the witnesses. (*In re Marriage of Cotton* (1984), 103 Ill. 2d 346, 356, 469 N.E.2d 1077.) Here, where only the respondent chose to appear and where it is apparent, in light of its decision, that the court determined respondent was credible, we are reluctant to overturn the court's decision that the children's environment may seriously endanger their physical, mental, moral, and emotional health, especially since to do so would, in our view, condone petitioner's deliberate acts of misconduct in failing to appear or respond to respondent's petition or lack of affidavit and allow her to benefit from her own misbehavior.

Petitioner argues that allowing for a waiver of section 610(a) violates one of the main purposes of the provision, *i.e.*, to give stability to child-custody awards. However, petitioner's failure to object to the

lack of an affidavit by responding to respondent's petition or appearing at the hearing promoted the custodial instability in this case. Had petitioner appeared or responded, she could have challenged the veracity of respondent's allegations in his petition and his testimony at the hearing. If petitioner had, in fact, shown that the children were not living in an environment which may endanger their physical, mental, moral, or emotional health, custody would have remained with her. By taking no action whatsoever, she cannot now complain that waiver of the affidavit requirement promotes custodial instability since any instability in the instant case was caused by her.

Finally, in support of her contention that she did not waive the affidavit requirement of section 610(a), petitioner argues that respondent's late filing of the affidavit shows that she did not waive the requirement. We take issue with petitioner's attempt to excuse her failure to act by respondent's act of filing the affidavit subsequent to the hearing on respondent's petition. Had respondent not filed an affidavit, petitioner could not even raise this issue. Moreover, petitioner was not prejudiced by the affidavit being filed late or by the court's alleged failure to adjudicate the late filed affidavit since the trial court was required to apply, as one of its standards at the hearing on the modification of the custody award, the same showing of endangerment that was required for the affidavit. (See *In re Custody of Carter* (1985), 137 Ill. App. 3d 439, 442-43, 484 N.E.2d 1175.) That the court reached its decision based on such a showing is evident from the court's findings at the September 10 hearing that "the children's present environment may seriously endanger their physical, moral, emotional, and mental health."

Petitioner complains that respondent's affidavit does not allege any facts showing endangerment. We are inclined to agree that the allegations within the affidavit are somewhat weak, but they can be read to allege endangerment to the children's physical and emotional health. Nevertheless, even if the affidavit is insufficient, it has been waived by petitioner as discussed above. Additionally, as in *Sexton*, respondent's verified petition informed the petitioner of the facts relied upon for a custody change, and the petition, along with respondent's uncontested and unimpeached testimony, constituted a showing of endangerment despite the lack of an affidavit.

The standard of review for modification of a child-custody order after a dissolution judgment becomes final is whether the modification is against the manifest weight of the evidence or an abuse of discretion. (*In re Marriage of Wechselberger* (1983), 115 Ill. App. 3d 779, 786, 450 N.E.2d 1385.) Implicit in the trial court's decision here that

a modification was necessary for the best interests of the children was the court's belief that endangerment had been proved. That decision was not against the manifest weight of the evidence or an abuse of discretion where the only evidence was that of respondent's petition and respondent's testimony, which the court chose to believe. As petitioner failed to respond to respondent's petition or to appear in person or be represented by counsel at the hearing so as to deny respondent's allegations or discount respondent's testimony regarding the criminal past of petitioner's present husband, the court had no option, having concluded respondent was credible, but to find that the children were in an environment which may endanger seriously their physical, mental, moral, or emotional health.

By virtue of petitioner's failure to respond to respondent's petition for change of custody or to object to a lack of a section 610(a) affidavit, simple justice supports the trial court's holding that the affidavit requirement was waived and that no relitigation was necessary since the standard for changing custody is identical to the standard by which the required affidavit was to be judged. (See *In re Custody of Sexton* (1981), 84 Ill. 2d 312, 322, 418 N.E.2d 729.) Accordingly, we affirm the trial court's order changing custody of the children from petitioner to respondent.

■■ ■ Petitioner's second contention is that the trial court erred in requiring petitioner to pay respondent's attorney fees since there was no showing of respondent's inability to pay his fees and petitioner's ability to pay the fees. (See *In re Marriage of Donahoe* (1983), 114 Ill. App. 3d 470, 477, 448 N.E.2d 1030.) Allowance of attorney fees in custody proceedings is within the sound discretion of the trial court and depends upon the particular circumstances of the case. (*In re Marriage of Cotton* (1984), 103 Ill. 2d 346, 360, 469 N.E.2d 1077; *Roth v. Roth* (1977), 52 Ill. App. 3d 220, 227, 367 N.E.2d 442.) The court must consider the relative financial positions of the parties, and the financial inability to pay of the party seeking attorney fees and the ability of the other spouse to do so must be shown. (*In re Marriage of Cotton* (1984), 103 Ill. 2d 346, 360-61, 469 N.E.2d 1077; *Roth v. Roth* (1977), 52 Ill. App. 3d 220, 228, 367 N.E.2d 442.) Additionally, the identity of the party who precipitated the need for the current legal fees should be considered. *In re Marriage of Cotton* (1984), 103 Ill. 2d 346, 361, 469 N.E.2d 1077; *Roth v. Roth* (1977), 52 Ill. App. 3d 220, 228, 367 N.E.2d 442.

In the instant case, it appears that the petitioner's acts of leaving the jurisdiction without the court's permission, making it virtually impossible for respondent to visit the children, and marrying an individ-

ual with an alleged background of criminal charges for abuse to minors, precipitated, in part, respondent's act of filing his petition for modification. It is clear that by her own misconduct petitioner partially brought on this post-decree proceeding on the petition to amend the dissolution judgment.

Nevertheless, we believe it would be unfair here to base the award of respondent's attorney fees solely on petitioner's conduct. Our primary concern in allowing the attorney fees is the relative abilities of the parties to pay. Here, the record demonstrates that petitioner did not have the ability to pay respondent's attorney fees. Petitioner was unemployed and was supported by her new husband with no income of her own. The court's order made a finding that petitioner had an interest in property which would allow her to pay attorney fees. However, the certified bystander's report of the proceeding on attorney fees indicates that the property interest to which the court referred was petitioner's interest in the marital home, which was to be sold, and that the payment of the debts out of the proceeds of the sale was likely to exhaust any equity in the real estate.

Moreover, the record reflects no evidence of respondent's inability to pay his attorney fees. Respondent, however, relies on *In re Marriage of Moriarity* (1985), 132 Ill. App. 3d 895, 478 N.E.2d 537, to argue that he is entitled to reasonable attorney fees, even absent a showing of his ability to pay, as it was necessary for him to use judicial process to enforce his rights under the terms of the divorce judgment. However, we believe the *Moriarity* court's resolution of the attorney fees in that case is not applicable to the case at bar since the action before this court concerns modification of the dissolution judgment and not enforcement of rights under that judgment.

In the instant case, the attorney fees in question appear to encompass a period from June 1983 through May 1985, and some of these fees do relate to rights under the original dissolution judgment. However, it is also evident from the petition regarding the fees that the total amount of the fees, $4,517.50, does not equal the total amount, *i.e.*, $2,510, set forth in the trial court's order. Thus, it appears obvious that some of the $4,517.50 in fees have already been paid and that there is no way to discern whether any of the remaining $2,510 in fees pertain to the enforcement of rights under the dissolution judgment or whether they pertain strictly to work relating to the modification of the judgment. As a result, in ruling on the issue of attorney fees here, we decline to apply the holding of *Moriarity* and instead, as mentioned above, concern ourselves with the well-established rule that the party seeking an award of attorney fees in proceedings

relating to a dissolution judgment must show financial inability to pay the fees and the financial ability of the other party to do so. *In re Marriage of Bauer* (1985), 138 Ill. App. 3d 379, 387, 485 N.E.2d 1318.

Here, although the trial court ordered petitioner to pay only a portion of respondent's attorney fees, such a finding constituted an abuse of the court's discretion since the bystander's report does not support a finding that the financial resources of the parties were such that petitioner was able to pay, and respondent was unable to pay, his attorney fees.

For all the reasons stated above, we affirm the trial court's order modifying the judgment of dissolution and giving custody of the minor children to respondent, and we reverse the trial court's judgment ordering petitioner to pay respondent's attorney fees.

Affirmed in part and reversed in part.

NASH, P.J., and WOODWARD, J., concur.