# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Burns*, 2019 IL App (2d) 180715

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF HEATHER BURNS, Petitioner-Appellant, and AUGUST LIFFERTH, Respondent-Appellee. |
| District & No. | Second District<br>Docket No. 2-18-0715 |
| Filed | March 7, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 12-D-2336; the Hon. Robert E. Douglas, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |
| Counsel on Appeal | Paul J. Bargiel, of Paul J. Bargiel, P.C., of Chicago, for appellant.<br><br>August Lifferth, of Indianapolis, Indiana, appellee *pro se*. |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices McLaren and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1  When petitioner, Heather Burns, and respondent, August Lifferth, divorced in 2014, the court approved and entered the parties' parenting agreement concerning their two sons. That agreement granted sole care, custody, and control to Heather, subject to August's visitation and other terms under the agreement.[1]

¶ 2  On September 27, 2017, pursuant to section 610.5 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/610.5 (West 2016)), August petitioned to modify the allocation of parental responsibilities and parenting time, alleging, in part, that his move to Indianapolis constituted a substantial change in circumstances and requesting the majority of parenting time and sole decision-making responsibilities. In response, Heather noted, in part, that August had moved three years earlier, in 2014; that the move had been anticipated when the agreement and dissolution judgment were entered; and, accordingly, that there had not been a substantial change in circumstances since the judgment was entered.

¶ 3  The trial court appointed a guardian *ad litem* (GAL), Andrew Cores, and held a hearing on the petition over a period of six days. Although Heather had the opportunity to cross-examine Cores and testify as a rebuttal witness in August's case-in-chief, she did not present her own case. Specifically, at the close of August's case, Heather moved for a directed finding under section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2016)). The court granted the motion "in part," finding that there had been no substantial change in circumstances affecting the overall welfare of the children and that, therefore, Heather would retain her status under the parenting agreement as the parent with primary parental responsibilities and decision-making powers. However, the court also found that the parties had demonstrated a propensity for petty and inappropriate behavior, and therefore it modified certain provisions of the agreement, including those concerning summer parenting time; videoconferencing between August and the children; where the children would be exchanged (sometimes in Indiana); August's authority to arrange counseling for the children; holiday parenting time; August's parenting time during the school year; who would be permitted to pick up and drop off the children; communication parameters and extracurricular guidelines; transportation of the children; the use of (and decorum while using) family scheduling tools; and expectations concerning scheduling changes.

¶ 4  Heather appeals. In sum, she argues that the court lacked the authority to modify the parenting agreement when it found no substantial change in circumstances, when the modifications were not minor, and when she did not have the opportunity to present a case-in-chief. We agree. For the following reasons, we affirm the court's finding of no substantial change in circumstances (a finding that August has not appealed), but we vacate the court's modifications to the agreement.

¶ 5             I. BACKGROUND

¶ 6  As noted above, in 2017, August petitioned to modify the "allocation of parental responsibilities and parenting time," requesting that he be awarded the majority of parenting time and sole decision-making responsibilities, as well as "any other further relief this court

---

[1]We note that the agreement further provided that any modification of any of the provisions would be effective only if made in writing and signed by the parties.

deems equitable and just." Heather's response denied that August should be awarded the majority of parenting time *and* that any change in parenting time or responsibilities should be made, as the 2014 agreement was in the children's best interests and there had been no substantial change in circumstances warranting any change. Further, Heather asserted various affirmative defenses and, therein, argued that the agreement was working for the parties. In her prayer for relief, Heather requested that the court (1) find that no substantial change in circumstances had occurred, (2) find that August had not shown that any modification was necessary to serve the best interests of the children, and (3) dismiss the petition with prejudice. The court then appointed Cores as GAL and held the hearing on August's petition. August represented himself, while Heather, an attorney, was represented by counsel.

¶ 7 Cores testified that his appointment had not required a written report but that he had informed the parties of his recommendations before the hearing. Cores recommended that the children stay in Illinois with Heather but that the parties implement certain changes to the parenting agreement. Heather had agreed to all but three of his recommendations, specifically, (1) that the parties meet halfway, in Indiana, to exchange the children after their time with August, (2) that August and the children videoconference three times weekly, and (3) that August arrange individual and family counseling for the children in Indiana. On all three topics, Heather e-mailed Cores that she disagreed and that she planned to present contrary testimony and other evidence to support her position.

¶ 8 August conducted the direct examination of Heather. At one point during the examination, Heather's attorney asked the court for a break to speak with Heather and possibly August about resolving the case. She noted that, although Heather had three primary objections to Cores's recommendations, Heather might be willing to make some concessions on those. The court allowed the time. August, however, interjected, "I'm not going to be in agreement with this." Accordingly, the hearing continued.

¶ 9 Heather testified to her positions concerning Cores's recommendations. As to exchanges, she stated, "I had made it abundantly clear that I believed that August should be responsible for the pick-ups for two very good reasons." She explained that August had been working only part time, while she worked full time, and that meeting halfway, as opposed to a curbside drop-off, would require interaction between the parties. Heather testified that she would not mind if August designated his wife or another responsible party to exchange the children and that she wanted the same option. As to summer parenting time, Heather suggested that she agreed with part of Cores's recommendation. Specifically, she explained that the parties currently each had 21 days with the children in the summer, but that Cores had recommended four periods of 7 days (and one period of 10 days). Heather stated that they had already planned for summer 2018, so any changes to summer parenting time should start in 2019. Further:

> "I think in the picking of the days it's already been indicated that we almost have half of the summer, however, a lot of visits August is able to schedule uninterrupted in [10] days and 14 days[,] rather than a week on week off. I am not—I am comfortable with the recommendations that Attorney Cores made having to do with adding additional days for the [7] days plus the [10], however, I think that—but I also think that should apply to me as well ***."

¶ 10 In addition, Heather noted that, with certain qualifiers, she generally agreed that August could take one of the children for an evaluation on possible occupational therapy. Heather also

testified that she would like to see August and the children videoconference three times per week, within certain parameters.

¶ 11 As previously noted, at the close of August's case, Heather moved for a directed finding. She argued that August had not shown that there had been "a substantial change of circumstances to warrant a change in allocation of parenting time *or* the boys['] primary residence." (Emphasis added.) She further noted that Cores had recommended that Heather remain the primary parent. Where she disagreed with Cores's recommendations, "Heather set out her strong and reasonable arguments in her [exhibit] of why[,] particularly on the transportation should not be modified and on the other issues were slight tweaking of his recommendations." She noted that, when Cores recommended that Heather drive halfway to exchange the children, he was not aware that August was working only part time. In conclusion, Heather requested that the court enter a directed finding in her favor and "adopt Attorney Cores's recommendations as made in the minor modifications by Heather in the three issues she presented in her [exhibit]."

¶ 12 The court granted Heather's motion "in part," finding that August failed to prove a substantial change in circumstances that affected the overall welfare of the children. However, noting that "the parties in this case have demonstrated a propensity for petty, vindictive and selfish behavior on a level far beyond what is normally seen by this court and, in an effort to curb such behavior," the court elected to adopt certain of Cores's recommendations and to make additional modifications in parenting time. Those modifications touched upon recommendations to which Heather objected and intended to present contrary evidence.

¶ 13 For example, the parenting agreement required August to bring the children to Heather's house after his weekend visitation, but the court ordered that "[e]xchanges shall take place at the Rensselaer Police Station, 122 S. Van Rennselaer St., Rennselaer, IN." Further, the court modified the agreement so that August's wife or another responsible adult designated by August may pick up and drop off the children, and August's wife would be added to the school pickup list. Heather also was allowed to designate another responsible adult. In addition:

> "Transportation: AUGUST shall continue to do all transportation to and from his parenting time. At such time as AUGUST is working in the capacity as a full-time employee, which shall be defined as one place of employment where AUGUST is scheduled and works at least 32 hours per week, *the parties shall meet half way for pickup and drop off for AUGUST's every other weekend parenting time* only. Pickup and drop off shall be at a well-lit public venue or police station at the halfway point between the party's [*sic*] respective residences. The pick-up and drop-off time shall be adjusted according to AUGUST's work schedule and the time involved for transportation to and from mid-point." (Emphasis added.)

¶ 14 Further, the parenting agreement provided that, during the summer, both parties would have up to three weeks of out-of-town vacation time with the children, taking up to one week at a time until the youngest child reached age six, after which they could take up to two weeks at a time. The parties would notify each other of their respective requests for summer parenting time and alternate years of "first choice." The court modified this provision so that the parties would receive summer parenting time on *alternating weeks*, starting immediately from the end of the school year. Upon giving Heather 30 days' advance notice, August would be allowed to extend one of his alternating weeks to 10 days.

¶ 15    As to communication with the children, the parenting agreement generally provided for reasonable communication, such as a call between 7 and 7:30 p.m. and, if the children were unavailable, a return call within 24 hours. The court struck this provision entirely and replaced it with six detailed paragraphs, allowing August to videoconference with the children via Skype three times per week, on Monday, Wednesday, and Thursday, between 6:30 and 7:30 p.m. Further, the children could elect to end the calls early, extend them, or, if reasonable, make additional calls; however, "by way of example only, if one of the children is being disciplined or having a disagreement with the parent in possession of the child, the parent in possession is NOT expected to permit the child to call the other parent." Further, "if August is unavailable on any single date scheduled for Skype there is no requirement for Heather to keep calling back and the next opportunity for August's Skype call will be the next Monday, Wednesday, or Thursday per the foregoing schedule."

¶ 16    Finally, the parenting agreement essentially required Heather to inform August regarding the children's healthcare providers and to share with him all relevant healthcare and related information. The court, however, provided that August may schedule individual and/or family counseling for the children in Indianapolis and may take one of the children for an evaluation of his walking and for possible occupational therapy; however, the evaluations would include input from Heather, and any treatment would take place in the Chicago area, as directed by Heather. Heather appeals.

¶ 17                                        II. ANALYSIS

¶ 18    Before turning to the merits of this appeal, we address the timeliness of our decision. This case is designated as "accelerated" pursuant to Illinois Supreme Court Rule 311 (eff. July 1, 2018) because it involves a matter affecting the best interests of children. Rule 311(a)(5) provides, in relevant part, that "[e]xcept for good cause shown, the appellate court shall issue its decision within 150 days after the filing of the notice of appeal." Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018). In this case, Heather filed her notice of appeal on September 5, 2018, and the 150-day period to issue our decision expired on February 2, 2019. However, we granted both parties' requests for extensions of time to file their opening briefs, as well as Heather's request for an extension of time to file her reply brief. As a result, briefing in this case was not completed until late December 2018. As such, we find good cause for issuing our decision after the 150-day deadline. See *In re Marriage of Wanstreet*, 364 Ill. App. 3d 729, 732-33 (2006) (noting that granting parties' requests for extensions of time to file their briefs allowed the parties the opportunity to develop and present their positions).[2]

¶ 19    Heather raises four overarching, related arguments on appeal. First, she contends that, once the trial court determined that August failed to establish a substantial change in circumstances affecting the children's overall welfare and granted her motion for a directed finding on that point, the case should have terminated. She contends that the trial court thereafter lacked the authority to modify the parenting agreement.

---

[2]We note that, on October 17, 2018, August moved to strike "non-record" exhibits Heather had allegedly filed and, on November 1, 2018, this court ordered the motion taken with the case. We hereby deny August's motion, as it does not specify which exhibits he wants stricken. In any event, we will disregard any improper exhibits.

¶ 20 Second, Heather argues that the court lacked the authority to *sua sponte* modify the allocation of parental responsibilities. She contends that the primary relief August sought was the majority of parenting time and sole decision-making responsibilities. Heather urges that, although the court decided that issue, and not in August's favor, it did not then conclude the matter. Rather, it "elected" to make significant modifications to the parenting agreement that August did not request. Heather argues that, where August's pleading did not request the modifications, the court improperly acted *sua sponte*.

¶ 21 Third, Heather argues that the court denied her due process by modifying the allocation of parental responsibilities without allowing her to first put on a case-in-chief. She contends that, as the petition did not request the modifications entered, she lacked notice of them. In addition, she asserts that the court should not have entered the modifications without first ruling on her pending petitions for rules to show cause relating to August's character and propensity to violate court orders.

¶ 22 Fourth, although Heather concedes that a court may modify a parenting agreement without a showing of changed circumstances, she asserts that it may do so only if certain conditions are satisfied and that, here, they were not. Specifically, she asserts that the modifications (1) did not reflect the actual arrangement under which the children had been receiving care, without parental objection, for the six months prior to the filing of the petition, (2) did not constitute a minor modification of the parenting agreement, (3) were not necessary to modify an agreement that the court would not have approved had it been aware of the circumstances at the time, and (4) were not agreed to by the parties. See 750 ILCS 5/610.5(e) (West 2016).

¶ 23 August argues that the modifications were proper, because his petition requested "any other and further relief this court deems equitable and just." In addition, he notes that Cores was appointed to represent the children's best interests, that the parties agreed to all but a few of Cores's recommendations, and that the court had valid reasons for making the modifications, having found specifically that the parties had demonstrated a propensity for poor behavior. August claims that, having agreed to most of Cores's recommendations, Heather is now experiencing a form of "buyer's remorse." August further asserts that, because Heather retained primary parental responsibilities and decision-making powers, and agreed to most of the modifications, the modifications were both minor and "agreed" to, as required by section 610.5(e) of the Act. August asserts that the modifications reflected the children's best interests.

¶ 24 We agree with Heather that the court erred. We note first that, in general, in a nonjury case when a court grants a directed finding based upon the failure to establish a *prima facie* case, we review the court's decision *de novo*. See, *e.g.*, *Hedrich v. Mack*, 2015 IL App (2d) 141126, ¶¶ 8-10. Further, in general, "[t]he standard of review for modification of a child-custody order after a dissolution judgment becomes final is whether the modification is against the manifest weight of the evidence or an abuse of discretion." *In re Marriage of Kading*, 150 Ill. App. 3d 623, 631 (1986). However, a court abuses its discretion when its decision is based upon a misapplication of law. See, *e.g.*, *Macknin v. Macknin*, 404 Ill. App. 3d 520, 530 (2010).

¶ 25 August's petition was brought pursuant to section 610.5 of the Act, which provides, in relevant part:

"[T]he court shall modify a parenting plan or allocation judgment when necessary to serve the child's best interests if the court finds, by a preponderance of the evidence, that on the basis of facts that have arisen since the entry of the existing parenting plan

- 6 -

or allocation judgment or were not anticipated therein, a substantial change has occurred in the circumstances of the child or of either parent and that a modification is necessary to serve the child's best interests." 750 ILCS 5/610.5(c) (West 2016).

¶ 26 Thus, the court has the authority to modify a parenting plan or allocation judgment pursuant to section 610.5(c) of the Act if (1) a substantial change has occurred since the existing parenting plan or allocation judgment was entered and (2) the modification is necessary to serve the child's best interests. *Id.*

¶ 27 Here, the court granted Heather's motion, finding that August failed to prove a "significant change in circumstances" that affected the "overall welfare of the children." Thus, the court found that August failed to establish *both* prerequisites for relief under his petition, *i.e.*, a *prima facie* case. That decision should have terminated the case. See 735 ILCS 5/2-1110 (West 2016) ("if the ruling on the motion is favorable to the defendant, *a judgment dismissing the action shall* be entered" (emphasis added)). Indeed, the court's ruling did terminate the case in the sense that the hearing ended, and no further evidence was received. However, the ruling did not "dismiss" or terminate the action in the sense that, despite finding that a *prima facie* case was not established, the court nevertheless entered relief under the petition. This court has not been presented with (or found) a case in which a court granted a motion for a directed finding on the basis that the opponent failed to establish a substantial change in circumstances warranting modification of an agreement, but nevertheless modified the agreement. We find that the court's granting a directed finding "in part" was improper.

¶ 28 Even if, theoretically, the court *could* have granted the motion in part by finding that, although there was no substantial change in circumstances under section 610.5(c), the modifications were justified under the factors in section 610.5(e), the court (1) neither stated that the modifications were premised on those factors (2) nor would have been correct in doing so. Section 610.5(e) states that:

"(e) The court may modify a parenting plan or allocation judgment *without* a showing of changed circumstances if (i) the modification is in the child's best interests; and (ii) any of the following are proven as to the modification:

(1) the modification reflects the actual arrangement under which the child has been receiving care, without parental objection, for the 6 months preceding the filing of the petition for modification, provided that the arrangement is not the result of a parent's acquiescence resulting from circumstances that negated the parent's ability to give meaningful consent;

(2) the modification constitutes a minor modification in the parenting plan or allocation judgment;

(3) the modification is necessary to modify an agreed parenting plan or allocation judgment that the court would not have ordered or approved under Section 602.5 or 602.7 had the court been aware of the circumstances at the time of the order or approval; or

(4) the parties agree to the modification." (Emphasis added.) 750 ILCS 5/610.5(e) (West 2016).

¶ 29 Factors one and three are not at issue here. August asserts that the modifications were appropriate based upon factors two and four. However, as to factor two, the modifications were not minor. A "minor" modification is "small" or "inconsequential." See *In re Marriage of*

*O'Hare*, 2017 IL App (4th) 170091, ¶ 27. We apply this provision narrowly, so as to comport with the Act's policy favoring the finality and continuity of parenting plans. *Id.* ¶ 28. Accordingly, even if the court had expressed that it was making the modifications under section 610.5(e)(2), which it did not, we would disagree. As noted, the court made *numerous* modifications to the parenting agreement, including modifying summer parenting time and requiring Heather to drive to Indiana for some exchanges. August asserts that Heather conceded that Cores's recommendations were "minor"; however, she actually stated only that her own modifications to those recommendations were minor. She did not concede that the recommended modifications to the agreement would be "minor," especially as that term is contemplated by section 610.5(e)(2).

¶ 30    Next, the court's order did not state that the parties had agreed to the modifications, as required under section 610.5(e)(4) of the Act. We note that the parenting agreement provided that any changes must be made in writing and signed by the parties; clearly, that did not happen here and, therefore, there is no evidence of an "agreement" in that respect. As August notes, however, the hearing transcripts are peppered with Heather's "agreement" to various aspects of Cores's recommendations, which the court then adopted. Nevertheless, we conclude that the context of those "agreements" suggests that they were unclear or, at best, conditional. For example, Heather's response and affirmative defenses to the petition argued primarily that the petition should be dismissed for failing to establish a substantial change in circumstances *and* that there should be no modifications to the agreement because the agreement was working for the parties. As such, Heather's "agreements" were conditioned on the court's finding a substantial change in circumstances. Heather did not clearly agree to any modifications to summer parenting time or transportation/exchange locations. Indeed, she even expressed her intent to present evidence disputing some of Cores's recommendations. Thus, although Heather's counsel suggested the possibility of a settlement, that possibility did not come to fruition, and there was no other evidence of a formal "agreement" between the parties.

¶ 31    Moreover, and moving into Heather's final argument, we do not know what evidence, if any, Heather ultimately might have presented to rebut the appropriateness of Cores's recommendations because the court entered the modifications without allowing Heather the opportunity to present evidence. Although Heather frames the issue as a denial of the opportunity to present a "case-in-chief," a "case in chief" is usually defined as the phase of a trial when the party with the burden of proof presents his or her evidence. See Black's Law Dictionary 216 (6th ed. 1991). Here, Heather was seeking the *status quo* and, thus, she did not have the burden of proof, especially considering the trial court's directed finding of no substantial change in circumstances. In any event, we agree that due process was violated. Specifically, although Heather was aware that August wanted parenting time modified, as to the modifications ordered *sua sponte* by the *court*, Heather was not given notice and an opportunity to be heard.

"An individual's right to procedural due process is guaranteed by the United States and Illinois Constitutions. See U.S. Const., amend. XIV, § 1; Ill. Const. 1970, art. I, § 2. This right entitles an individual to 'the opportunity to be heard at a meaningful time and in a meaningful manner.' *In re D.W.*, 214 Ill. 2d 289, 316 (2005). 'Due process is a flexible concept'; not all circumstances call for the same type of procedure. *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 201 (2009). However, the fundamental right to the opportunity to be heard ' "has little reality or worth unless one is informed that

the matter is pending." ' *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 28 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950))." *People v. Rucker*, 2018 IL App (2d) 150855, ¶ 17.

¶ 32   In *Rucker*, there was a pleading that put Rucker on notice, but he was not given the opportunity to be heard on it before judgment was entered. In this case, the trial court effectively denied the only pleading pending before it. Thereafter, the court, *sua sponte*, altered the parenting agreement, with neither a pending pleading giving Heather notice nor an opportunity for either Heather or August to be heard. Without a pending pleading requiring a response from Heather, it would have been an exercise in futility for her to present evidence or argument in a "case-in-chief."

¶ 33   In sum, for the aforementioned reasons, the trial court erred in modifying the parties' 2014 parenting agreement. That is not to say that we are immune to the court's frustration with the parties' petty and vindictive behavior or its well-intentioned attempt to streamline and assist the parties' parenting relationship to avoid conflict. We hope that any progress the parties made in light of Cores's recommendations or the court's findings will not be lost as a result of our decision. Indeed, the parties' testimony reflects that, although a "legally binding" agreement was not reached to warrant judicial modification of the parenting agreement under the unique presentation of evidence here, a meeting of the minds might be possible such that they can now, through mediation, written agreement, or otherwise, adopt and incorporate into their parenting agreement those changes that are acceptable to both.

¶ 34   We note that, in his response brief, August requests that we remand the case to modify the parenting agreement in various ways and to give him the opportunity for rebuttal questioning of Cores. However, as August did not file a cross-appeal, he may not seek such relief. See, *e.g.*, *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 14 (1995).

¶ 35                                   III. CONCLUSION

¶ 36   For the reasons stated, the judgment of the circuit court of Du Page County is affirmed in part and vacated in part.

¶ 37   Affirmed in part and vacated in part.