2024 IL App (2d) 240378-U
No. 2-24-0378
Order filed December 10, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| GRESHA ROYER, | ) | of De Kalb County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 18-D-226 |
| | ) | |
| BROCK ROYER, | ) | Honorable |
| | ) | Sarah Gallagher-Chami, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Presiding Justice Kennedy and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court's modification of the parties' parenting plan was error because there was no demonstration that the modification was in the child's best interest or that the modification was minor. Trial court is reversed.

¶ 2    Petitioner, Gresha Royer, challenges the trial court's judgment granting overnight parenting time to respondent, Brock Royer. For the reasons that follow, we reverse.

¶ 3                    I. BACKGROUND

¶ 4    The parties were married in October 2015, in De Kalb County, Illinois. J.R., a daughter, was born to the parties in June 2016. In September 2018, Gresha filed a petition for dissolution of

marriage. The trial court appointed Nina Cosentino as guardian *ad litem* (GAL) in December 2019. On May 30, 2019, the trial court entered an agreed order providing Brock with temporary parenting time on Mondays, Tuesdays, and Fridays from 7:00 a.m. to 5:30 p.m. each day. The order also required that one or both of Brock's parents must be present during all of Brock's parenting times and that Brock will not drive with J.R. in the car without another adult present.

¶ 5     In February 2020, the GAL submitted a written report to the trial court, which we summarize. The parties lived in Brock's parents' basement during the marriage. In 2016, Brock's employer terminated him for cause. Brock's personnel records described several instances where he appeared to be intoxicated, "out of it," or "on something." Brock maintained that he was disabled and had applied for social security disability insurance benefits. He reported that he had serious medical issues in the past including testicular, breast, and lymph cancer, broken bones, shoulder surgeries, and gastronomical issues. He also claimed that he suffered from an inoperable, but benign, brain tumor that may have caused a change in his behavior. Brock has been diagnosed with bi-polar disorder and has been hospitalized for mental health issues in the past. Brock told the GAL that he was on an extensive amount of medication for pain and his other health issues. Brock told the GAL that he "struggles each day with debilitating pain and overwhelming fatigue where he just 'crashes' or 'passes out.' " Although the GAL requested a list of his medical providers and his medical records, Brock did not provide them, with minor exceptions. Brock did provide a record of a diagnostic test that indicated the brain tumor was benign.

¶ 6     The GAL's report stated that Gresha is J.R.s primary care giver. Even though Gresha works full-time during the week and Brock does not work, J.R. has been in daycare since she was three months old. Gresha had no knowledge of Brock's medical treatments and had concerns that Brock was abusing drugs.

¶ 7    J.R. is presently six years old. J.R. told the GAL that when she is visiting Brock, his parents are not always there, and sometimes Brock drives her in the car to pick up her stepsister, G.R.

¶ 8    The GAL also spoke with Brock's first wife, Katie, at his request. Katie told the GAL that they have a daughter and that she did not trust Brock alone with their daughter until she was nine years old. Katie had concerns about Brock's mental health and drug abuse, leading to their divorce. She stated that she was not aware of Brock receiving any medical treatment for cancer, or any other illnesses, during their marriage.

¶ 9    When considering the allocation of parenting time, and the mental and physical health of the parties, the GAL reported that she was concerned about Brock's multiple medical issues, "laundry list of medication," his "self-medicating," multiple accounts of erratic behavior, and failure to cooperate. In addition, the GAL believed Brock's health issues hindered his ability to place J.R.'s needs ahead of his own. The GAL stated that Brock needed to provide his medical records and that overnights were reserved until verification of this issue.

¶ 10    On February 19, 2020, the trial court entered a judgment of dissolution of marriage, a marital settlement agreement, and an agreed parenting plan (February 2020 parenting plan).

¶ 11    The February 2020 parenting plan provided:

Article II

Allocation of Parenting Time

"2.1. Majority Parenting Time. Gresha shall be designated as the parent with the majority share of parenting time. Gresha is allocated all parenting time not specifically allocated to Brock.

2.2. <u>Brock's Parenting Time</u>. The parenting schedule set forth in [the court's May 30, 2019,][1] Order is incorporated into this agreement and shall remain in full force and effect until further order of the court.

2.3. <u>Supervised Parenting Time</u>. The parties have previously agreed that Brock has medical conditions requiring the need of another adult to be present to be of assistance during his parenting times. This person is most commonly his father, but his mother and other adult relatives have served in this capacity. Brock's parenting time shall remain assisted as such until further order of the Court. ***.

2.4. <u>Conditions to Modify Restriction</u>. Prior to filing a motion or pleading seeking to modify the restriction, Brock shall comply with all of the following benchmarks:

A. Brock shall ensure that [the GAL] is provided with a full disclosure of all relevant medical, psychological, and psychiatric records. This benchmark shall not be considered met until [the GAL] has represented to the parties that she is satisfied with Brock's disclosure. The disclosure requirement shall be a continuing obligation, until such time as [the GAL] has indicated it is no longer necessary.

B. Brock shall provide [the GAL] with full access to review his February 2020 evaluation with Braden Counseling Center.

C. Brock shall not drive [J.R.] without his father (or other assisting adult) present until further order of the Court;

---

[1]Paragraph 2.2 of the February 2020 parenting plan contains a scrivener's error, regarding the date of the order.

2.5. Brock shall disclose sufficient information to Gresha and to [the GAL] *** to confirm compliance with these benchmarks.

2.6. Any modification of the restriction shall be in accordance with Section 603.10 of the [Illinois Marriage and Dissolution of Marriage Act (Act)] and shall require a showing of a change in circumstances and that modification is in the best interests of the minor child."

¶ 12 In September 2021, Brock filed a "Motion to Remove Parenting Time Restrictions/Reservations and [to] Modify Parenting Time." Brock contended that a substantial change in circumstances had occurred since the judgment because his health had improved. He claimed there were no health concerns related to his ability to (1) care for J.R. on his own during his parenting time; (2) exercise overnight parenting time, including vacation time, with J.R.; (3) safely drive alone with J.R.; (4) travel with J.R.; or (5) have access to J.R.'s passport for travel purposes.

¶ 13 In January 2022, the trial court entered an agreed order allocating parenting time to Brock "on a temporary basis," every other weekend from 9 a.m. on to 5 p.m. on both Saturday and Sunday. The order stated that all prior orders not in conflict with the present order shall remain in full force and effect.

¶ 14 In November 2022, Brock's counsel withdrew and Brock's "Motion to Remove Parenting Time Restrictions/Reservations and [to] Modify Parenting Time" was stricken without prejudice.

¶ 15 In August 2023, Brock filed a motion to modify parenting time where he alleged that since the entry of the February 2020 parenting plan, substantial changes in circumstances existed that eliminated the need for any restrictions on his parenting time, and that it was in the best interests

of J.R. to eliminate the restrictions and to grant him liberal parenting time. Gresha denied these allegations in her response to Brock's petition.

¶ 16    The trial court heard testimony and argument on Brock's motion for several days between August and November 2023. The GAL testified in Brock's case-in-chief. She noted that the court appointed her in December 2018. When the GAL first became involved in the case, there were agitation "issues" with Brock. Mike, Brock's father, told the GAL that Brock had "a host of medical issues" including a debilitating, inoperable brain tumor, several bouts of cancer, he saw doctors "just about every day," and he was on "a cocktail of medications." Since the beginning of the GAL's involvement in the case until the present she saw no change in Brock, meaning: "the agitation, the inability to control his anger directed at me, directed at my staff, directed at [Gresha], directed at the former babysitter, none of that has really quelled the agitation and anger." The GAL explained that Brock would not cooperate with her when she attempted to meet with him.

¶ 17    When Brock finally met with the GAL, he failed to provide the medical records or releases that she requested. The GAL relied on the representations of Brock, his father, and his attorney, that Brock had an inoperable brain tumor that affected his ability to work. At the end of 2022 or the beginning of 2023, Brock provided his mental health records, and later his internist's records "for things that were not necessarily part of my concern." The GAL testified that she did not ask the court to order the required medical records to be subpoenaed because since Brock filed a motion to modify, "the onus was on him, the burden was on him to provide those [records]." The production of medical records was a requirement of the February 2020 parenting plan. As an example of missing medical records, the GAL had a record that referenced that Brock saw a neurologist in January 2019. When she asked Brock for updated records, he told her that he never went back to the neurologist after that date. This concerned the GAL because in 2020 Brock told

her and the court that he "still had this debilitating brain tumor preventing him from working, *** it was an explanation for his rants and his text messages to *** [Gresha] as well as an explanation for his inappropriate emails to me, and at the time I accepted that but I wasn't satisfied because I didn't know what the condition was nor what the prognosis was or the treatment, and then [Brock stated] those were the updated records, [but] they stopped in January of 2019, so something didn't add up. It still doesn't add up to me." Brock "fought" the GAL in her attempts to obtain his medical records and told her that she "had everything." Although Brock told the GAL he would sign a release so that she could get his records, he did not do so.

¶ 18    The GAL also testified that Brock's erratic behavior preceded her February 2020 report to the court and his bad behavior "amped up after [her] report." In February 2020, Brock explained his erratic behavior by telling the GAL that he had an inoperable brain tumor. Brock represented that he could not work, had applied for disability, and the issue of child support had been reserved. In 2023, however, Brock represented that "he's perfectly fine." He was again working and driving. The GAL was concerned by the "missing piece of the puzzle." She did not know what happened between 2020 and 2023 to cause the change. In 2023, Brock told the GAL that he had treatment that shrunk the brain tumor and that it was now benign. But Brock had also claimed he had not seen a neurologist since January 2019 and provided no medical records.

¶ 19    The GAL opined that Brock was either untruthful about his medical condition in 2020 or in 2023 and that she would not change her position without a year or two of a change in his behavior. Brock had failed to disclose his medical, psychological, and psychiatric records. He had driven unsupervised with J.R. in violation of the February 2020 parenting plan. Regarding Brock's ability to have unsupervised, unrestricted parenting time with J.R., the GAL saw no change in Brock's behavior since she submitted her February 2020 written report to the court. Nonetheless,

the GAL opined that J.R.'s age warranted overnight parenting time with Brock, although she recommended that the overnights be supervised.

¶ 20    Kendra Royer, Brock's mother, testified that Brock had driven with J.R. unsupervised. Kendra was aware of the court's order that prohibited Brock from driving J.R. while unsupervised, but she did not believe Brock needed supervision while driving and he did not need "that order." Kendra did not intervene when Brock drove J.R. unsupervised in violation of the court's order and she would not intervene in the future. Kendra testified that she and her husband were present "98%" of the time Brock had parenting time with J.R. Kendra and her husband had the same opinion about Brock's driving restriction.

¶ 21    Brock testified that he worked for the Army Corps of Engineers driving a vehicle. He had no "underlying conditions" that hindered his job performance. He described his physical health as "good." Although he had a brain tumor, it did not impair him. Since 2019, he had not followed up with any medical doctors because he had no symptoms and no medical insurance. Brock also testified that he had a medical marijuana card and used marijuana. Brock testified that he "probably" drove J.R. without another person present.

¶ 22    Gresha testified that Brock still sends her harassing emails and incoherent messages.

¶ 23    Brock rested and Gresha moved for a directed finding, which the trial court denied.

¶ 24    Gresha called Brock as her first witness. Brock testified that he could not remember whether he ever drove J.R. unsupervised.

¶ 25    Gresha testified that she saw Brock drive J.R. unsupervised, on July 17 and July 30, 2023. She believed that Brock's parents were improper supervisors because they did not believe that he needed supervision.

¶ 26    On January 30, 2024, the trial court entered an order granting Brock an overnight visit with J.R. every other weekend. The court provided that he "shall have parenting time with [J.R.] from Saturday at 9:00 am [sic] to Sunday at 5:00 pm."

¶ 27    The court found that Brock had not established a substantial change in circumstances to warrant a modification of the February 2020 parenting plan. However, the court reasoned that, pursuant to section 610.5(e) of the Act, it may modify parenting time without finding a substantial change in circumstances. 750 ILCS 5/610.5(e) (West 2022). The court found that it was in the best interests of J.R. to modify the parenting plan and that the modification was minor.

¶ 28    On February 29, 2024, Gresha filed a motion to reconsider, which the trial court denied on May 29, 2024. This timely appeal followed pursuant to Illinois Supreme Court Rule 311(a) (eff. July 1, 2018).

¶ 29                                    II. ANALYSIS

¶ 30    This is an accelerated appeal under Illinois Supreme Court Rule 311(a) (eff. July 1, 2018). Under this rule, we are required to issue our decision within 150 days after the filing of the notice of appeal unless good cause has been shown for the delay. Ill. S. Ct. R. 311(a)(5) (eff. July 1, 2018).

¶ 31    Here, Gresha's notice of appeal was filed on June 28, 2024, and our disposition was due to be filed November 25, 2024. This deadline has passed. However, the common law record submitted by the circuit clerk's office was incomplete and Brock failed to file an appellee's brief. To properly consider the merits of Gresha's appeal, we reviewed this record thoroughly. Given the foregoing, we find good cause for issuing our decision after the 150-day deadline.

¶ 32    As stated, Brock has not filed a brief in this appeal. However, because the record is straightforward and the claimed errors are such that we can decide them without the aid of an

appellee's brief, we will consider the merits of the appeal on Gresha's brief only. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 33    At issue in this appeal is whether the trial court's modification of the parties' February 2020 parenting plan is in the child's best interests and constitutes a minor modification pursuant to section 610.5(e) of the Act. 750 ILCS 5/610.5(e) (West 2022).

¶ 34    Gresha contends that the trial court's modification of the February 2020 parenting plan, increasing the number of overnight visits from zero to 26 each year, is more than a "minor modification" permissible under the Act. See 750 ILCS 5/610.5(e)(2) (West 2022). Upon our review, we agree with Gresha.

¶ 35    Section 610.5(e) of the Act provides that a trial court may "modify a parenting plan or allocation judgment without a showing of changed circumstances if *** [1] the modification is in the child's best interests [and it is proven] *** [2] the modification constitutes a minor modification in the parenting plan." 750 ILCS 5/610.5(e) (West 2022). A trial court must consider all relevant factors when determining the best interests of a child, including the 17 factors set forth in section 602.7(b) of the Act (750 ILCS 5/602.7(b) (West 2022)). See *In re Custody of G.L.*, 2017 IL App (1st) 163171, ¶ 43. However, the court "is not required to make an explicit finding or reference to each factor." *Id.* When evaluating the child's best interests, the court considers all the relevant factors.

¶ 36    We review modification judgments under the manifest weight of the evidence standard. See *In re Marriage of Bates*, 212 Ill. 2d 489, 515 (2004). Further, a trial court's determination as to the best interests of the child will not be reversed unless its determination is clearly against the manifest weight of the evidence. *In re Parentage of J.W.*, 2013 IL 114817, ¶ 55. "A judgment is

against the manifest weight of the evidence only when the opposite conclusion is clearly apparent." *Id.*

¶ 37    Because the Act favors "the finality and continuity of parenting plans," a modification is considered "minor" under section 610.5(e)(2) only in limited circumstances; meaning when it is "small" or "inconsequential." *In re Marriage of Burns & Lifferth*, 2019 IL App (2d) 180715, ¶ 29 (citing *O'Hare v. Stradt*, 2017 IL App (4th) 170091, ¶¶ 27-28). When a trial court makes a minor modification to a parenting plan, it must ensure that the parenting plan's original intent remains intact. *In re Marriage of Wendy S.*, 2020 IL App (1st) 191661, ¶ 25. Whether a modification should be considered "minor" under the Act is a factual inquiry and we will not reverse a trial court's factual findings unless they are against the manifest weight of the evidence. *In re Marriage of Wolff*, 355 Ill. App. (3d) 403, 413 (2005).

¶ 38    Here, Brock failed to sustain his burden to prove that the modification was in J.R.'s best interests or that the modification was minor. The record is clear that since the beginning of this case, Brock had numerous serious medical problems that precluded him from caring for J.R. unsupervised and from driving with her unsupervised. In 2020, Brock told the GAL that his debilitating pain and overwhelming fatigue caused him to pass out daily. This culminated in the February 2020 parenting plan that required Brock to provide the GAL with medical records. However, Brock failed to fully provide his medical records and failed to present evidence other than self-serving statements that his serious medical problems had subsided or resolved. Considering the historical context for the prior conditions, there was insufficient evidence presented to establish that this alteration was a minor alteration and, in the child's best interests. Further, there was ample testimony that Brock drove J.R. without supervision and that his parents were not always present during J.R.'s visits, both in violation of the February 2020 parenting plan.

In short, the trial court's finding that overnight visits with Brock every other weekend was in the best interests of J.R. was against the manifest weight of the evidence. The determination that the alteration was a minor modification from the parties' agreed parenting plan is a mixed question of law and fact. We determine Brock failed to sustain his burden of proof to allow us to affirm the difference between the two sets of circumstances to be a minor change. Brock failed to prove he substantially changed and thus failed to establish the change to the parenting order was a minor change. We hold that the court's determination that this was a minor change in the parenting order to be manifestly erroneous.

¶ 39                                    III. CONCLUSION

¶ 40      For the reasons stated, we reverse the judgment of the circuit court of De Kalb County.

¶ 41      Reversed.